UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETER NYGARD, NYGARD INTERNATIONAL PARTNERSHIP, and NYGARD INC.

                          Plaintiff,

- against -

JACKY JASPER a/k/a SEAN MERRICK a/k/a GREG COMEAU a/k/a HOLLYWOOD STREET KING a/k/a HSK d/b/a DIARYOFAHOLLYWOODSTREETKING.COM and JOHN or JANE DOES 1-10,

                          Defendants.

Case No. 14-cv-1313 (PGG)

**FIRST AMENDED COMPLAINT**

---

Plaintiffs, PETER NYGARD (hereinafter "Plaintiff"), NYGARD INTERNATIONAL PARTNERSHIP, and NYGARD INC. (hereinafter the "Entity Plaintiffs") (together Plaintiff and Entity Plaintiffs shall be referred to as "Plaintiffs" unless otherwise specifically designated) by their attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, complaining of Defendants JACKY JASPER a/k/a SEAN MERRICK a/k/a GREG COMEAU a/k/a HOLLYWOOD STREET KING a/k/a HSK d/b/a DIARYOFAHOLLYWOODSTREETKING.COM (hereinafter "Defendant") and yet to be identified individuals sued as JOHN or JANE DOES 1-10 (the "Doe Defendants"), allege as follows:

## PARTIES:

1.     Plaintiff Peter Nygard, an individual, is and at all times relevant was, a citizen of and domiciled within Canada.

2.     Plaintiff Nygard International Partnership is a partnership registered in the Province of Manitoba and, amongst other things, carries on business as a designer, manufacturer, seller and distributor of women's clothing throughout Canada and the world, with its principal

administrative offices located at 1771 Inkster Boulevard, in the City of Winnipeg, in the Province of Manitoba.

3.  Plaintiff Nygard Inc. is a Delaware Corporation headquartered in this judicial district.

4.  Upon information and belief, Defendant is an individual with several aliases who is domiciled in the State of California.

5.  Upon information and belief, Defendant creates and develops information provided through the Internet, including without limitation, in connection with the "Hollywood Street King" interactive website maintained by the Defendant and accessible in this judicial district via the following URLs: www.DiaryofaHollywoodStreetKing.com and www.HollywoodStreetKing.com (together the "Website" as both direct to the same page).

6.  Plaintiffs are currently without the ability to ascertain the true identities of the Doe Defendants but are informed and believe that such persons are directly and/or directly engaging in the conduct alleged herein and are liable for the violations alleged in this Complaint.

## JURISDICTION AND VENUE:

7.  This is a civil action arising under the Lanham Act and the laws of the State of New York as a result of Defendant's malicious posting and dissemination of material over the Internet containing defamatory statements regarding Plaintiff Peter Nygard as well as an unauthorized reproduction of Mr. Nygard's image and unauthorized reproductions of federally registered trademarks owned by Plaintiff Nygard International Partnership and licensed and used by New York headquartered, Nygard Inc.

8.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1332(a) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

2

6002403v.2

9. Upon information and belief, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct comprising the subject matter of this action has caused harm within the State of New York and this judicial district and/or because Defendant transacts business or supplies services within the State of New York.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events at issue and Defendant's unlawful acts have occurred in this district, have targeted parties in this judicial district, and/or Plaintiffs have suffered and are continuing to suffer harm in this district.

## GENERAL ALLEGATIONS:

11. The Entity Plaintiffs are in the business of manufacturing, advertising, and distributing high-quality merchandise throughout the world, including the United States.

12. Plaintiff Peter Nygard, an individual, is principal, beneficial owner, and a prominent figure with respect to both Entity Plaintiffs.

13. For years, and well before the acts of the Defendant identified herein, the Entity Plaintiffs have continuously used various trademarks to identify and distinguish their goods in the marketplace. These distinctive trademarks include various common law trademarks as well as the following marks, which are among the many inherently distinctive trademarks owned by Plaintiff Nygard International Partnership or its affiliates, and registered on the Principal Register of the United States Patent and Trademark Office: Registration No. 3,979,204; Registration No. 3,690,655; Registration No. 3,424,971; and Registration No. 3,512,888 (the federally registered trademarks hereinafter collectively referred to as the "Nygard Trademarks"). True and correct copies of the registration certificates associated with the Nygard Trademarks

are attached hereto as Exhibit 1. These trademarks are also registered in Canada and other jurisdictions.

14. The Nygard Trademarks have at all relevant times been owned by the Entity Plaintiffs or their affiliates or predecessors.

15. In continuous and exclusive use for years, as well as being the subject of the expenditure of millions of dollars in promotion and advertising, the Nygard Trademarks and the related Nygard "brand" are recognized as indicators of source for the Entity Plaintiffs' high-quality goods and are the embodiments of the substantial and valuable goodwill associated with Nygard products.

16. As a result of the substantial investment in the promotion of the Nygard Trademarks, and the goods associated therewith, the consuming public has come to immediately recognize and associate the marks/brand with high-quality products manufactured, sponsored, distributed, sold, or approved by Nygard.

17. As a result of Nygard's significant investment and promotional efforts, and prior to the acts of Defendant alleged herein, the Nygard Trademarks have become famous in the minds of consumers as designations of source for Nygard goods.

18. The Nygard Trademarks are symbols of Nygard's quality, reputation and goodwill and have never been abandoned.

19. The Entity Plaintiffs' brands, commercial reputations, and credit among the general public and business community are reliant upon, and inextricably intertwined with, Mr. Nygard's personal reputation and credit.

20. The specifics of the close public association between the activities of Nygard and the Entity Plaintiffs, well known to Defendant and the public, generally, are as follows:

  (a) Nygard is the principal of Nygard International Partnership; and,

  (b) Nygard International Partnership markets its products using Nygard's name and his personal and photographic image.

21. Consequently, the following untrue and defamatory statements and innuendo referred to herein tend to lower the Entity Plaintiffs in the estimation of right thinking members of society generally, and reflect negatively on the character and reputation of the Entity Plaintiffs. The following untrue and defamatory statements and innuendo tend to bring the Entity Plaintiffs into odium and contempt; disparage and reflect negatively on them, and generally, constitute defamatory words of and concerning the Entity Plaintiffs.

22. Indeed, the Entity Plaintiffs market their products using Mr. Nygard's name and his personal photographic image, including without limitation, in connection with the numerous trademarks containing Mr. Nygard's surname referenced above.

23. For several years, Defendant has engaged in a systematic attack on Plaintiff Peter Nygard and his image. Such conduct includes malicious posting and dissemination of material to the Internet, including postings appearing on the Website as early as February 6, 2012 directed at untrue allegations regarding Mr. Nygard's personal life. However, such attacks have been aggressively heightened over the past month.

24. Upon information and belief, Defendant represents its Website as "the realest celebrity gossip and philosophy blog on the internet." See, Advertise on HSK, Diary of a Hollywood Street King, available at: http://diaryofahollywoodstreetking.com/advertise-on-hsk/ (last visited February 27, 2014).

25. Upon information and belief, the Website is interactive, and available worldwide, including within the State of New York. Moreover, Defendant's website indicates that its legal

department for purposes of receiving notices of copyright infringement can be reached by sending a fax to: (646) 390-8154, Attn: HSK Legal / DMCA Complaints. Upon information and belief, (646) is an area code covering the County of New York.

26. Upon information and belief, Defendant, as the intended purpose of the Website, obtains revenue, including without limitation in the form of third party advertising, as a result of its maintenance of the Website and the dissemination of content thereon.

27. Upon information and belief, the services Defendant offers in connection with the Website include the publication and dissemination of "original content," including gossip, rumors, and conjecture. *See*, Terms of Use at §§ 1 and 11, Diary of a Hollywood Street King, available at: http://diaryofahollywoodstreetking.com/hsk-terms-of-use/ (last visited February 27, 2014).

28. Defendant does not make "any warranty as to the correctness or reliability of the sites' content" and concedes and boasts that "information on the sites may contain errors or inaccuracies." *See*, Terms of Use at § 11, Diary of a Hollywood Street King, available at: http://diaryofahollywoodstreetking.com/hsk-terms-of-use/ (last visited February 27, 2014).

29. Upon information and belief, "HSK content is delivered to MILLIONS" of readers and consumers "on a monthly basis direct [*sic*] from the website." *See*, Advertise on HSK, Diary of a Hollywood Street King, available at: http://diaryofahollywoodstreetking.com/advertise-on-hsk/ (last visited February 27, 2014).

30. Upon information and belief, sometime prior to February 25, 2014, Defendant created and developed multiple postings concerning the Plaintiff and Plaintiff's private life.

31. On February 24, 2014, Defendant sent to Plaintiff's attorney an email containing three attachments. Defendant sought a response from Plaintiff regarding the contents of the

6002403v.2

attachments which were described as "exposes". One of the attachments was virtually identical to the posting identified in paragraph "33" below. Plaintiff's attorney informed Defendant that the attachments contained defamatory, malicious and damaging material, and were the fruit of an extortion effort by other persons against Plaintiff. Plaintiff's attorney put Defendant on notice that the postings should not be published and that the attachments contained defamatory, malicious and damaging material. Defendant callously disregarded this information and warning.

32. Upon information and belief, Defendant's intent in communicating with Plaintiff's attorney in this manner was for the purpose of harassing and/or threatening Plaintiff.

33. On or about February 25, 2014, Defendant published a work prominently featuring Plaintiff's image and an unauthorized reproduction of the Nygard Trademark on the Website. The published work was entitled: "Fashion Tycoon Peter Nygard Paid $10K To Make Scat Video To [sic] Go Away!", all of which contained numerous express, or by necessary implication, defamatory statements falsely accusing Plaintiff of engaging in sexually repugnant activities in his personal life (the "2.25.14 Posting").

34. Defendant's unauthorized use, display, and reproduction of the Nygard Trademarks on its Website devoted to the provision of salacious and low-brow content, including in connection with the Posting, is causing harm to Plaintiffs insofar as the consuming public will associate the Nygard Trademarks with the unsavory services offered by Defendant, thereby diminishing the goodwill and prestige symbolized by the Nygard Trademarks and the Nygard Brand.

35. On or about February 27, 2014, Defendant published and disseminated another work on the Internet, including on Defendant's Website, entitled: "Peter Nygard's Sadist Wrath

6002403v.2

Caught On Camera!" (the "2.27.14 Posting"). This posting features video footage of Mr. Nygard "secretly filmed" at one of his homes in the Bahamas. This video was illegally created under Bahamian law as Mr. Nygard did not consent to the recording of his voice or image and it was obtained on his property without his permission. The 2.27.14 Posting characterizes the featured footage as "one of the many [videos of Mr. Nygard] [Defendant has] obtained" and includes the following statement: "Be sure to check back with us as there is much more about Nygard to come…"

36. On or about February 28, 2014, Defendant published and disseminated a third work on the Internet, including on Defendant's Website, entitled: "Peter J. Nygard Exposed Doctoring Death to Cheat Death!" (the "2.28.14 Posting") (the 2.25.14 Posting, 2.27.14 Posting, and 2.28.14 Posting together the "Postings" unless otherwise specifically designated). The 2.28.14 Posting imputes criminal conduct to Mr. Nygard and contains an unauthorized reproduction of an audio visual work created and owned by Plaintiffs.

37. Upon information and belief, Defendant's intention in using the Website to publish and disseminate the Postings was for the purpose of harassing Mr. Nygard.

### COUNT I: DEFAMATION / LIBEL PER SE
### BY PLAINTIFF PETER NYGARD

38. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 32 above as if fully set forth herein.

39. Defendant made false statements of fact of and concerning the Plaintiff without authorization and published these statements on the Internet with the intention that they reach a broad public audience, including without limitation, in connection with the Postings.

40. Defendant's statements contained in the Postings falsely and repeatedly state that Plaintiff has engaged in the above-referenced sexually deviant acts and/or impute criminal conduct to Plaintiff (the "False Statements").

41. Upon information and belief, at the time Defendant published the False Statements, Defendant was aware of the falsity or probable falsity of the False Statements.

42. At the time Defendant published the False Statements, Defendant acted with reckless disregard as to the truth or falsity of the statements.

43. Defendant's conduct in publishing and disseminating the False Statements to third parties over the Internet was intentional, knowing, malicious, and with callous disregard of Plaintiff's rights.

44. Defendant's conduct in publishing and disseminating the False Statements to third parties was deliberately calculated to injure Plaintiff professionally and prevent or discourage clients from dealing with Plaintiff's many businesses.

45. Defendant's False Statements constitute libel *per se*.

46. As a direct and proximate result of Defendant's intentional publication and dissemination of the False Statements, Plaintiff has suffered, is suffering, and will continue to suffer permanent and irreparable injury, harm and damage to Plaintiff's personal and professional reputation both within New York and elsewhere, exposing Plaintiff to public contempt, ridicule, aversion or disgrace, and deterring others from associating and/or dealing with Plaintiff. Plaintiff's business interests, i.e. the Entity Plaintiffs, will be similarly damaged by the False Statements.

47. Plaintiff has incurred substantial costs and expenses in addressing and counteracting Defendant's wrongful conduct.

48. As a result of Defendant's unlawful conduct, Plaintiff has suffered, is suffering, and will continue to suffer severe and irreparable harm and substantial damages in an amount to be proven at trial, unless Defendant is permanently enjoined from engaging in such conduct.

## COUNT II:  TRADEMARK DILUTION
## IN VIOLATION OF 15 U.S.C. § 1125 BY THE ENTITY PLAINTIFFS

49. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 43 above as if fully set forth herein.

50. Defendant's conduct in using the famous and inherently distinctive Nygard Trademarks without authorization in connection with the Website is causing and, unless stopped, will continue to cause harm to the Nygard Trademarks by creating negative associations among the public and impugning the prestige and value of the Nygard Trademarks and high-quality goods they represent.

51. Defendant's conduct constitutes trademark dilution in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c).

## COUNT III:  TRADEMARK DILUTION
## IN VIOLATION OF NEW YORK LAW BY THE ENTITY PLAINTIFFS

52. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 46 above as if fully set forth herein.

53. Defendant's conduct in using the famous and inherently distinctive Nygard Trademarks without authorization in connection with the Website is causing and, unless stopped, will continue to cause harm to the Nygard Trademarks by creating negative associations among the public and impugning the prestige of the Nygard Trademarks and high-quality goods they represent.

6002403v.2

54. Defendant's conduct will improperly dilute the value of the Nygard Trademarks in violation of New York General Business Law § 360-l.

## COUNT IV: INVASION OF PRIVACY
## IN VIOLATION OF NEW YORK LAW BY PLAINTIFF PETER NYGARD

55. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 49 above as if fully set forth herein.

56. Defendant, without Plaintiff's authorization of consent, knowingly used Plaintiff's name and image in the Posting published and disseminated via the Internet in the State of New York.

57. Defendant's unauthorized use of Plaintiff's name and image was for the purposes of advertising or trade.

58. Upon information and belief, Defendant obtained a commercial benefit from its publication of the Posting to the Internet by way of increased traffic to the Website, thereby violating Plaintiff's right of publicity.

59. Defendant's conduct constitutes a violation of New York Civil Rights Law §§ 50 and 51.

60. As a result of Defendant's unlawful conduct, Plaintiff has suffered, is suffering, and, unless stopped, will continue to suffer severe and irreparable harm and substantial damages entitling Plaintiff to equitable and monetary damages in an amount to be determined at trial.

61. As a result of Defendant's knowing conduct, Defendant is answerable in exemplary damages.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY
## PLAINTIFF PETER NYGARD

62. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 56 above as if fully set forth herein.

63. Defendant's publication and dissemination of the Postings on the Internet specifically identifying Plaintiff, Plaintiff's business, and containing other personally identifying information including his direct personal e-mail address and telephone number was deliberately calculated and intended to cause emotional distress to Plaintiff.

64. Defendant's publication and dissemination of the Postings on the Internet in conjunction with the False Statements impugning Plaintiff's integrity, business, profession, and personal reputation by imputing Plaintiff with sexual deviance exceeded all bounds of common decency observed in a civilized community such that Defendant should have known such acts would result in emotional distress to Plaintiff.

65. Defendant's publication and dissemination of the Postings on the Internet was egregious, outrageous, willful, wanton and malicious, and deliberately calculated to cause harm to Plaintiff.

66. As a result of Defendant's unlawful conduct, Plaintiff has suffered, is suffering, and, unless stopped, will continue to suffer severe and irreparable harm and substantial damages in an amount to be determined at trial, but at least $75,000.00.

67. As a result of Defendant's willful, wanton, and malicious conduct, Defendant is responsible for compensatory and punitive damages.

## COUNT VI: CYBERHARASSMENT IN VIOLATION OF NEW YORK PENAL LAW § 240.30 BY PLAINTIFF PETER NYGARD

68. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through X above as if fully set forth herein.

69. Defendant's unlawful conduct constitutes aggravated harassment in the second degree in violation of New York Penal Law § 240.30.

70. Defendant's conduct represents an attempt to cause, and has caused, substantial emotional distress to Plaintiff.

71. Accordingly, Defendant is liable for its pattern and practice of harassing conduct in this civil action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Grant judgment in favor of Plaintiffs and against Defendant on all of Plaintiffs claims;

B. Declare that Defendant's statements are defamatory to Plaintiffs and award actual and punitive damages in an amount to be determined at trial;

C. Permanently enjoin and restrain Defendant, his agents, subsidiaries, servants, partners, employees, and all others in active concert or participation with Defendant, from using the Nygard Trademarks in any manner;

D. Permanently enjoin and restrain Defendant, his agents, subsidiaries, servants, partners, employees, and all others in active concert or participation with Defendant from making and disseminating defamatory statements regarding Plaintiffs and assisting, aiding, or abetting any other person or entity in engaging or performing any of the aforementioned activities;

E. Permanently enjoin Defendant, his agents, subsidiaries, servants, partners, employees, and all others in active concert or participation with Defendant, from

       engaging in any conduct or act which would reasonably be foreseen to harass any of the Plaintiffs;

F.    Order that Defendant delete and permanently remove all of the Postings referenced herein and any such further postings by Defendant regarding any of the Plaintiffs;

G.    Order that Defendant delete and permanently remove all content displaying unauthorized reproductions of the Nygard Trademarks or defaming Plaintiffs from the Website and any other domain in Defendant's possession, custody, or control;

H.    Award Plaintiffs actual damages;

I.    Award Plaintiffs such punitive damages for Defendant's willful and intentional acts in an amount the Court deems just and proper;

J.    Award Plaintiffs pre-judgment interest on any judgment as provided by law;

K.    Award Plaintiffs reasonable attorney's fees, costs, disbursements, and interest as provided by law;

L.    Order that the amount of any damages, profits, or other monetary relief obtained or granted be increased or trebled as provided by law; and

6002403v.2

M.  Grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
February 27, 2014

Respectfully Submitted,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____
Adam R. Bialek (AB 6268)
Richard L. Reiter (RLR 8786)
150 E. 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Facsimile: (212) 490-3038
Adam.Bialek@wilsonelser.com
Richard.Reiter@wilsonelser.com
*Attorneys for Plaintiffs*

6002403v.2